IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SHERRY HAMPTON,

    Plaintiff,

v.

SHELBY COUNTY, TENNESSEE,
ANTHONY ALEXANDER, in his official
capacity and individual capacity, and
ANTHONY GUNN, in his official
capacity and individual capacity,

    Defendants.

Case No. _____

**JURY DEMANDED**

_____

**COMPLAINT**
_____

COMES NOW Plaintiff, Sherry Hampton, and brings this civil rights action against her employer, Defendants Shelby County, Tennessee, her Supervisor, Anthony Gunn ("Gunn"), and her Administrator, Anthony Alexander ("Alexander"), both in their official capacities and individual capacities.  Plaintiff, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12201, et seq. ("ADA"), and 42 U.S.C. § 1983, seeks to remedy the Defendants' violations of Title VII, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.  As set forth herein, Plaintiff was subjected to unlawful employment practices by Defendants, leading up to and when she was disciplined by Defendant Gunn and Defendant Alexander for refusing to attend a fitness for duty examination.

## I. PARTIES

1. Plaintiff, Sherry Hampton, is a resident citizen of Shelby County, Tennessee and a current corrections officer with the Shelby County, Tennessee, at the Division of Corrections. At all times relevant hereto, Plaintiff is ready, willing and able to perform all of the essential functions of her position.

2. Defendant Shelby County, Tennessee is a governmental entity in the State of Tennessee and is a public employer and the legal entity that operates the Shelby County Division of Corrections ("SCDOC").

3. Defendant Anthony Alexander is Administrator of the SCDOC and, at all times relevant hereto, had supervisory authority over Plaintiff. In his position as Administrator of SDOC, Defendant Alexander is empowered to make employment decisions within the Division of Corrections. For his unlawful actions under the color of state law as described herein, Defendant Alexander is being sued in his official capacity as well as in his individual capacity under Count I of this Complaint.

4. Defendant Anthony Gunn is the Human Resources Manager of the SCDOC and, at all times relevant hereto, maintained supervisory authority over Plaintiff. He has the authority and is empowered to make employment decisions within the Division of Corrections. For his unlawful actions under the color of state law as described herein, Defendant Gunn is being sued in his official capacity as well as in his individual capacity under Count I of this Complaint.

## II.  JURISDICTION AND VENUE

5. The Court has jurisdiction over Plaintiff's discrimination and retaliation claims pursuant to 42 U.S.C. 2000e and Plaintiff's ADA claim pursuant to 42 U.S.C. § 12201, *et seq.*, and Plaintiff's equal protection and due process claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and 42 U.S.C. § 1988.

6. Venue is proper in this Court as all parties can be found in this District and all the actions complained of herein took place in this District.

## III. STATEMENT OF FACTS

7. Plaintiff was hired by Defendant SCDOC on January 3, 1995 as a corrections officer.

8. Throughout her employment with the SCDOC, Plaintiff has consistently met or exceeded expectations in her job performance as is evidenced by her performance evaluations and commendations.

9. On February 2, 2017, Plaintiff learned that she had a blood clot near her right knee, for which she sought medical treatment.  Plaintiff was off work from February 2, 2017 to February 17, 2017.

10. Her physician released her to return to work with no restrictions on February 20, 2017, on which date Plaintiff returned to work.  Plaintiff brought a cane with her to work that she infrequently used if she felt a cramp in her leg.

11. On that date, Gunn called her and told Plaintiff she could not use a cane and sent her home.  Plaintiff took sick leave for the next three days.

12. Plaintiff returned to work on February 23, 21017, without a cane, and worked her entire shift, performing all of the essential functions of her position.

13. On February 24, 2017, Plaintiff went to work carrying an umbrella. William Spears, Deputy Administrator with the SCDOC, approached her and asked her if her doctor knew what kind of work she did and instructed her to take a copy of her job description to her doctor.

14. Spears then called the Call Center (to whom employees call in to report an absence) and requested a copy of Plaintiff's return to work not from her doctor.

15. Plaintiff was not allowed to work on Friday, February 24, 2017, and was sent home and required to use annual leave. Plaintiff's regular days off are Saturday and Sunday.

16. Plaintiff returned to work on Monday, February 27, 2017 but was sent home by the Call Center supervisor, Jackie Coleman, and instructed not to return until she obtained another doctor's statement indicating that she could return to work without restrictions.

17. Plaintiff obtained a new doctor's statement returning her to work without restrictions on February 28, 2017.

18. On March 1, 2017, Plaintiff returned to work with the second doctor's statement returning her to work without restrictions. Plaintiff worked the entire shift that day and performed all of the essential functions of the position.

19. On March 2, 2017, Plaintiff went to work and went to her post at the 1-A Building. She received a call from a Lieutenant who instructed to go to D Building. Upon information and belief, Plaintiff was instructed to go from the 1-A Building to the D Building so that Defendants could observe her walking from one post to the other.

20. Thirty minutes after she arrived at the D Building, Plaintiff was called by Defendant Gunn, who told her that she had to participate in a fitness for duty evaluation at the County's expense. Plaintiff refused and questioned why she was being ordered to go to a medical examination when Johnny Lewis, a male corrections officer, who is similarly-situated, was

4

allowed to use a cane or assistive walking device at work and had not been sent for such an examination. Plaintiff voiced her opposition to perceived gender discrimination in the March 2, 2017 phone call with Gunn.

21.     About 10 minutes after the call with Gunn, Plaintiff received a call from another Lieutenant and was instructed to go to Alexander's office. At that meeting, Defendant Gunn again informed her that she would have to go to a fitness for duty examination. Plaintiff refused, saying that she was returned to full duty.

22.     Defendant Alexander informed Plaintiff in the March 2, 2017 meeting that Plaintiff was being put on suspension with pay for "unprofessional conduct."

23.     Plaintiff maintains that she could and can perform all the essential functions of her position as a corrections officer without the need for accommodations.

24.     Defendants did not have a reasonable belief based upon objective evidence that Plaintiff's ability to perform the essential functions of her job were impaired or that Plaintiff posed a direct threat to herself or others due to a medical condition.

25.     Defendant's instruction that Plaintiff participate in a fitness for duty evaluation was not job-related and consistent with business necessity.

26.     Plaintiff has been ready, willing and able to return to her position as a corrections officer with the SCDOC without restrictions or accommodations and is still ready, willing and able to return to that position without restrictions or accommodations.

27.     On March 7, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") in Memphis, Tennessee, Charge No. 490-2017-01216 (the "Charge") alleging disability discrimination. A true and correct copy of the

charge is attached hereto as Exhibit A.  In her Charge, Plaintiff alleged discrimination based upon sex and retaliation and complained of being sent for a fitness for duty examination.

28. The Charge was filed within 300 days of the adverse employment actions complained about herein.

29. On March 10, 2017, the EEOC issued a Notice of Right to Sue Within 90 Days to Plaintiff (the "Notice").  A true and correct copy of the Notice is attached hereto as Exhibit B.

30. On May 5, 2017, Plaintiff was issued a Pre-Disciplinary Hearing Notice, charging her with violations of Shelby County Division of Corrections Policies, including but not limited to "Obedience to Orders."

31. A Pre-Disciplinary or Loudermill Hearing was held on May 11, 2017.  Upon information and belief, no decision has been rendered from that hearing.

32. On June 6, 2017, Plaintiff was again issued a Pre-Disciplinary Hearing Notice, charging her with violations of Shelby County Division of Corrections Policies, including but not limited to "Obedience to Orders."   The Loudermill hearing is set for June 9, 2017.

33. Plaintiff has exhausted her administrative remedies.

**34.** This action is timely filed.

### IV. CAUSES OF ACTION

### COUNT I – VIOLATION OF THE EQUAL PROTECTION ACT AND DUE PROCESS AGAINST ALL DEFENDANTS

35. Plaintiff incorporates the paragraphs above by reference as though specifically set forth herein, and alleges that:

36. Defendants' actions constitute unlawful gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as

6

enforced through 42 U.S.C. § 1983. Specifically, Defendant Gunn, with the knowledge, assent and concurrence of Defendant Alexander, disciplined Plaintiff based upon her gender.

37. Defendants' actions constitute an arbitrary and capricious deprivation of the Constitutionally protected property interests Plaintiff has in her employment, without notice or an opportunity to be heard, in violation of the Due Process clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

38. Defendants' actions do not further an important government interest by means that are substantially related to that interest.

39. As a direct and proximate result of Defendants' intentional and unlawful conduct toward Plaintiff, Plaintiff has or will have lost significant wages and benefits and has sustained other pecuniary loss. Plaintiff, as a direct result of Defendant's intentional and unlawful actions, has suffered damage to her professional career and professional reputation, as well as to her personal reputation. Further, Defendant's intentional and unlawful actions taken against Plaintiff have been demeaning to Plaintiff and have caused Plaintiff to suffer pain, humiliation, and embarrassment, as well as emotional distress.

40. Defendants' unlawful actions complained of above were intentional, malicious, and taken in reckless disregard to the constitutional rights of Plaintiff.

### COUNT II – VIOLATIONS OF THE TITLE VII AGAINST DEFENDANT SHELBY COUNTY

41. Plaintiff incorporates the paragraphs above by reference as though specifically set forth herein, and alleges that:

42. Defendants Shelby County's actions constitute unlawful gender discrimination and retaliation in violation of Title VII. Specifically, Defendant Gunn, with the knowledge, assent and concurrence of Defendant Gupton, individuals acting on behalf Shelby County disciplined Plaintiff

based upon her gender and in retaliation for her voicing opposition to perceived gender discrimination.  Upon information and belief, other male individuals have been allowed to attend work with a cane, have not been ordered to participate in a fitness for duty evaluation and have been treated more favorably than Plaintiff.

43. As a direct and proximate result of Defendant Shelby County's intentional and unlawful conduct toward Plaintiff, Plaintiff has and continues to lose significant wages and benefits and has sustained other pecuniary loss. Plaintiff, as a direct result of Defendant's intentional and unlawful actions, has suffered damage to her professional career and professional reputation, as well as to her personal reputation. Further, Defendant's intentional and unlawful actions taken against Plaintiff have been demeaning to Plaintiff and have caused Plaintiff to suffer pain, humiliation, and embarrassment, as well as emotional distress.

44. Defendants' unlawful actions complained of above were intentional, malicious, and taken in reckless disregard to the constitutional and statutory rights of Plaintiff.

## V. PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Plaintiff prays that the following relief be granted following a jury verdict in her favor:

1. An award of back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

2. Reinstatement;

3. Front pay and the value of future lost benefits if reinstatement is not feasible;

4. Compensatory damages for emotional distress, loss of enjoyment of life, humiliation and embarrassment caused by Defendants in an amount to be determined by the jury;

5. Punitive damages against Defendants in amounts to be determined by the jury;

6. All costs, expenses, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees allowed under actions brought pursuant to 42 U.S.C. § 1983 and the ADA;

7. A Declaration that Defendant's practices as complained of herein to be in violation of the ADA and the Fourteenth Amendment of the Constitution;

8. A trial by jury; and

9. Such further legal and equitable relief as is deemed just and proper.

Respectfully Submitted,

/s/ James M. Allen

JAMES M. ALLEN BPR 015968
Attorney for Plaintiff
ALLEN LAW FIRM, PLLC
212 Adams Avenue
Memphis, TN 38103
901-321-0731 P
901-321-0751 F
jim@jmallenlaw.com